Hear ye, hear ye, the United States Court of Appeals for the 6th Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Please be seated. Good morning and welcome to the Court of Appeals for the 6th Circuit. Before we begin, I wish to assure you that the panel is prepared for your cases this morning. We have read your briefs. Because we are prepared, we would prefer it if you'd please spend your time arguing the most important issues in the case. We will assume that for issues that are not argued today, that you rely upon the arguments contained in your briefs. Finally, if your counsel for the appellant and wish to reserve some time for rebuttal, please so indicate to me and also to our court officer. With that, you may call the first case. Case number 185099, USA v. Donald Myers. Argument not to exceed 15 minutes per side. Ms. Mayo, you may proceed for the appellant. Good morning. Good morning. May it please the court, John Amayo for Donald Myers and I've reserved 3 minutes for rebuttal. Yes, I apologize. I'd like to start with the Tennessee statute at issue, which is the initiation of meth manufacture. That statute defines initiation in three ways. First, you can begin the extraction of a methamphetamine precursor. Secondly, you could do active modification of a commercial product used in meth creation. Third, you could either heat or combine any substance used in meth creation. It's our position that this statute is too broad to count as a controlled substance offense and as a serious drug felony under federal law. In particular, 18 United States Code 924E. The government's position is that the initiation statute is an attempt. And Mr. Myers acknowledges that certainly attempts and co-ed offenses qualify as controlled substance offenses in certain circumstances. Go ahead. What could you do to violate the statute with the requisite intent? We know the intent has to be to produce methamphetamine. What could you do that wouldn't constitute an attempt? I have several specific examples from Tennessee case law that I would like to cite to the court. And in citing these, I would like to keep in mind the fundamental premise that in order to have an attempt under federal law, you must have a substantial step that unequivocally corroborates your criminal purpose. So, for example, in State v. Dunn, you have a defendant who's cutting open a cold compression pack. That alone was enough under Tennessee law to qualify as an initiation. But they found other things with it, right? In that case, Your Honor, there are other cases in which they found other paraphernalia along with it. But they found nothing that, in our position, unequivocally corroborates the criminal purpose. So it's not the intent element. It's that you can do less than... Why wouldn't that qualify under the federal attempt? Isn't it a substantial step towards an overt act? I think that the examples from the Tennessee Court of Criminal Appeals fall short of what's required for a federal attempt. And I would point the Court to State v. Ralph, which is a decision in which there were a number of materials used in meth manufacture found inside a home. Mr. Ralph was present inside the home, and he had jeans that were stained with iodine. So the Court concluded that that alone, the fact that he was present at a location where these materials were found, that he had iodine on his clothing, was enough to qualify as initiation. But I think... It seems to me that you are merging two concepts. One is evidentiary, and one is what you need to find the person guilty. So I don't think that the jury could have found him guilty of having iodine on his pants. The question was whether there was enough evidence that he was involved in the manufacture. So if the jury finds that he has iodine on his pants, then it can infer that it got there because he was using it as part of a manufacturing process. And why would that be insufficient? Well, I would point the Court... I have several other case law examples, but I suppose what the Court is concerned with is the fact that this statute is, especially the use of the word involving, is very broad. But the McKinney decision in particular from the First Circuit says that while the term involving in the statute may be expansive, it's not limitless. So what that case cautions against is that the Court cannot interpret any offense which bears any relationship to the manufactured distribution or possession with intent to manufacture or distribute as a serious drug felony under ACCA. And so I think that although inferences may be drawn under state court for these decisions, it's not enough. Our position is that it runs too far afield of a federal attempt. It runs too far afield of what constitutes a serious drug felony under ACCA. Okay. I mean, you agree that attempt does qualify of involving the manufacturing. Okay. Yes, sir. But I see this Tennessee statute as more specific than a general attempt, that it encompasses an attempt. In fact, it's so specific that things that would be attempts probably don't qualify because there's only three elements, that you have to begin the extraction of the meth, or you have to heat it, or you have to begin the act of modification. I mean, there's only three things that qualify as an attempt. And I would think this is narrower, not broader, than the common attempt. Do you disagree with that? Well, I can certainly see the Court's position with respect to that there are a finite list of elements. These are the elements. Yes. Don't we look at the elements? Isn't that what we should do here? Yes, we should look at the elements. But I think that when you're looking at what qualifies as an attempt versus initiation, the case of State v. Banks, which is a Tennessee Court of Criminal Appeals. Which case? It's State v. Banks. It's a 2010 decision in the Tennessee Court of Criminal Appeals. That recognized a distinction between offenses that qualify as attempts versus initiations. So I understand the Court's point that not every attempt is an initiation and vice versa. However, I think... Well, I think every initiation would be an attempt because I think the initiation is narrower than attempt. I think attempt would be a broader scope of activities. And Tennessee, the initiation statute is much narrower. So initiation would, by definition, include attempt. That's the way I look at it. Yes, Your Honor. And I think that State v. Banks viewed it somewhat differently. Okay. So we look at the Tennessee Supreme Court cases for the interpretation? I mean, I know we could look at lower court decisions if there is not a Supreme Court decision. Yes, Your Honor. But they're not dispositive, are they? They're not. And unfortunately, this is an area of the law in which we examined every single Tennessee decision from all of the courts that interpreted this particular statute. And unfortunately, most of the case law in this arena comes from the Tennessee Court of Criminal Appeals. And that's where the Banks decision originates from. And in that case, it says that the crime of initiation does not include every attempt. Doesn't include what? Every attempt. Yes, because it's narrower than attempt. And so I think that you have situations where you have crushed pseudo-ephedrine, and that alone qualifies as an initiation, when, again, I think that that would be too broad to qualify as an ephedrine. Doing what would be ephedrine, though? I didn't hear everything you said. You have a situation where what? There are several examples from, again, the Tennessee Court of Criminal Appeals, State v. Ferguson, State v. Tweedy, and State v. McCullough, that dealt with the presence of crushed pseudo-ephedrine alone. Some of them had other paraphernalia along with it, but essentially you have crushed pseudo-ephedrine along with other materials that could be used in meth manufacture. And those illustrate the fact that there's confusion among the Tennessee courts as to what even constitutes an attempt versus an initiation versus a facilitation. So, for example, in State v. Ferguson, the court ruled that if you have crushed pseudo-ephedrine along with other meth-making materials, that constitutes a facilitation of initiation. Then, just four years later, you have crushed pseudo-ephedrine along with paraphernalia, and the court says that's initiation. And the same holds true for the McCullough decision. You have crushed pseudo-ephedrine tossed in a bag in a ditch, and the court says that's enough for initiation. So that seems to highlight that there's some confusion even among the Tennessee courts as to where the line is drawn and what is a substantial step. And you're saying that in the federal system, somebody can't be convicted if they have crushed pseudo-ephedrine, if the jury is satisfied from all the evidence, that that was the beginning of the attempt to manufacture? I certainly concede that what the case law says is that if you have crushed pseudo-ephedrine, then that could qualify as, under the Tennessee statute, as an active modification of a commercial product because you don't have pseudo-ephedrine available in crushed form. But our point is that it's still too broad to count as a federal attempt because it's not an unequivocal corroboration of a criminal purpose. It's not an unequivocal corroboration? It doesn't qualify as a federal attempt because a federal attempt requires, under the Pennyman decision, that you have an act that unequivocally corroborates a criminal purpose. That's what you need for a substantial step. That's what you need for an attempt under federal law. And I don't think that crushed pseudo-ephedrine, without more, unequivocally corroborates a criminal purpose to manufacture methamphetamine. But I'm trying to find out whether this is sort of conjecture on your part or whether there are cases in the federal system that say it's not enough to have a crushed precursor. Well, the cases that we cited, most of them are not in the context of ACCA, unfortunately. What we cited in our briefing involved the guidelines definition of a controlled substance, which we recognize is narrower than the serious drug felony definition at issue here. But in Tate and Walterman, those decisions say that if you have, in Tate, for example, possession of just anhydrous ammonia and nothing more, that cannot qualify as a controlled substance offense. In Walterman, from the Eighth Circuit, they held that if you have just possession of lithium alone, that cannot qualify as a controlled substance offense, and it did not qualify as a career offender predicate. And the focus there was on a separate issue, which I can address in my rebuttal, as to what is the definition of a controlled substance offense. Okay, any further questions? All right, thank you. You'll have your three minutes for bubble. Good morning. Good morning. May it please the Court. Luke McLaurin on behalf of the United States. Mr. Myers' armed career criminal classification and sentence should be affirmed because the Tennessee offense of initiating methamphetamine manufacture process is a serious drug offense under the Armed Career Criminal Act. And I think the key word in that statutory definition is the word involved. For our purposes here, that statute defines a serious drug offense as any state offense involving manufacturing a controlled substance. And Tennessee's offense of initiating a methamphetamine manufacture process is an offense that involves the manufacture of a controlled substance. So the statute says that it's not a defense that it would not have resulted in meth had the process been completed. Does that pose a problem? Not at all, Your Honor. All that portion, I believe you're referring to subsection B of the statute. Yes. Which says it's not a defense that the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed. Is that what you're referring to? Last, yes. I don't think that's a problem. Because, again, this statute is getting at people who are trying to go down the process of creating meth, whether they are actually successful or not. And that is an offense that involves the manufacture of methamphetamine. But I don't understand how something could involve the manufacture of methamphetamine if, by definition, it did not involve the manufacture of methamphetamine. Well, it involves the manufacture of methamphetamine in the same way that a failed attempt does, right? Somebody who is trying to manufacture methamphetamine, but fails in their attempt because they collect the wrong chemicals, right? They have the intent to manufacture meth, but they just don't have the right knowledge of how you build a meth lab. And so they put together their meth lab incorrectly, and they fail in their attempt to create meth. That person is still prosecutable for attempting to manufacture methamphetamine. Yeah. And that situation would be no different than this offense here. But it is, in the sense that this gives you a definition that the process would not actually. So one of them is that it didn't. So it's not complete, or they didn't actually finish. But this says that the process would not actually create it. So I just, I don't, yes, I can see how that's an attempt. But I don't know how that involves the manufacture of something that you couldn't possibly make. It's an offense that involves manufacturing methamphetamine in the same way that attempts to manufacture a conspiracy to manufacture meth involve the manufacturing of methamphetamine. You can be engaged in a conspiracy to manufacture meth without taking any overt act in support of that conspiracy. You have simply agreed that you're going to manufacture meth, and you do absolutely nothing to then create meth. You can still be guilty of conspiracy, and that would qualify as a serious drug offense under numerous courts' case law. And I take it if the meth was not manufactured as part of the conspiracy, you could still be convicted of conspiracy? Yes, you could still be convicted of conspiracy if your conspiracy is unsuccessful. In the same way that you can be convicted of attempt if your attempt is unsuccessful. And I think that's all that the Tennessee legislature was doing in the subsection B, is to say, look, it's not a defense to say I was an incompetent methamphetamine cook. That's not going to be a defense. If you are trying to collect this stuff, and you are trying to engage in this process, intending for it to create meth, the fact that you mess up the process doesn't make your conduct any less harmful or less blameworthy. It still involves manufacturing even if the manufacturing is not successful? Absolutely, Your Honor. Okay, and that's kind of what the statute says, even if it would not result in the creation of methamphetamine. So it involves manufacturing of the meth even if it's failed or faulty manufacturing or defective manufacturing. It still involves manufacturing. Exactly. Involves is a broad term. It is meant to encompass those offenses that are related to or connect with the underlying offense of manufacturing. Okay, you start out by saying it's clear that this does involve manufacturing, but there's no authority on this. Is there? This is an issue of first impression, Your Honor. This is an issue of first impression in both this circuit and any other circuit. As far as I'm aware, this Tennessee statute has never been considered by any other federal court of appeals. No matter what our decision would be, we probably should publish this decision, I assume. That would most likely be helpful for litigants in the future. There are lots of cases out there from other circuits. There's unanimous agreement among the circuits that the word involving in the serious drug offense definition is broad and encompasses lots of things. And every circuit that has addressed it has agreed. It includes things like conspiracies, attempts, aiding and abetting, offering to sell. And I think it's noteworthy that in some of those cases they've applied the serious drug offense definition to conduct that is far less serious than the conduct at issue in Tennessee statute. This Tennessee statute looks to me like it's unique. It uses initiation or initiates rather than attempt. Is it unique or does any other state use this kind of a thing? As far as I'm aware, this is a very unique statute. And the history of this is that this was passed in 2005 as part of a comprehensive package of legislation where the state of Tennessee was really trying to go after the methamphetamine problem. Okay. Is the Tennessee initiation statute narrower than attempt? Would attempts, would the three elements or the three examples or whatever you call them of the Tennessee statute always be an attempt? I believe so. At least they would. I think, let me answer your question in two parts. I think under Tennessee law they would all qualify as attempts. And I think under federal law they would also all qualify as attempts. And you agree that attempt does involve, involving the manufacturer, that attempt to manufacture would involve manufacturing? Yeah, not only do I agree, but this court has already agreed. If you look at the Thomas decision from 2001, an unpublished decision, acknowledge it's not binding, but this court has already noted, look, attempting to manufacture or attempting to distribute a controlled substance also counts as a serious drug offense. Is that cited in your brief, I assume? Yes, that is cited. But there's numerous other circuits that have also said attempting to manufacture, attempt qualifies. And those are all cited in our brief. Would you agree that initiating the process is a subset of attempt? It would appear to be in the sense that any initiation of methamphetamine manufacture process would count as an attempt. But not every attempt to manufacture methamphetamine is going to fall under the terms of this statute. So I agree it is narrow and precise in the way you identified previously, Judge Griffin. And I acknowledge this is an unusual situation where we have, Tennessee has multiple statutes that are trying to get at the same criminal conduct. These statutes have different elements. But the only question in front of this court today is whether this statute with these elements is an offense that involves the manufacture of methamphetamine. I think the clear answer to that question is yes. I mean, when you look at what this statute requires, it requires somebody to begin a process that they know is intended to create meth. And that is precisely the kind of conduct that Congress wanted to get at when it included this broad word involving in the Armed Court Criminal Act. As other circuits have noted, what Congress is trying to do is get at those individuals who have inserted themselves into this dangerous world of drug trafficking. And somebody who intentionally goes and tries to create methamphetamine and initiates a process for doing so is precisely that kind of individual. Our position is this statute just sort of falls squarely under the language of the Armed Court Criminal Act because it involves the manufacturing of methamphetamine. What about the cases that counsel cited just having one precursor or something? Thank you for bringing that up, Judge White. I do want to address each one of those directly. The first one I'll talk about is Dunn. In State v. Dunn, Mr. Dunn was not convicted simply because he cut open a cold compression pack. There were other things in his vehicle that could have been used to make meth. And the Court, in affirming that conviction, specifically noted that the evidence was sufficient because it showed the defendant was the person who cut open the cold compression pack, quote, excuse me, that Mr. Dunn cut open the cold compression pack, quote, in order to obtain ingredients to use in the manufacture of methamphetamine. They didn't find him guilty because he just happened to cut open a cold compression pack. They found him guilty because he did so knowing he was initiating a process intended to result in the creation of meth. That's why he was found guilty in that case. The same in the Ralph case. I think my colleague said that case was simply about somebody having iodine. That's not how the Tennessee Criminal Court of Appeals looked at it. The Tennessee Criminal Court of Appeals, in affirming that conviction, also specifically noted that the evidence was sufficient because it showed that the defendant made the use of a quantity with the intention of creating methamphetamine. The Court found that important, right? This person wasn't convicted. This statute doesn't criminalize just going out and having methamphetamine precursors and having to combine them together. This statute criminalizes people who get those methamphetamine precursors and start a process to create meth, knowing that that's what they're doing. Well, so it says initiates means to begin extraction of an immediate methamphetamine precursor from a commercial product to begin active modification. So what do you need to do? If you cut something open, that's enough? Just cutting something open by itself is not enough. You need to do so. Knowing that you are initiating a process intended to result in the creation. Right, but I'm just trying to figure out what's enough. I understand the requisite intent, but what is enough of an act to constitute beginning the extraction? Which clause did these various defendants violate? Was it beginning the extraction? Was it to begin the active modification? I would believe that the Dunn case likely involved the active modification of a commercial product, although I don't recall off the top of my head the precise portion of the initiation part that was involved in that case. I'd also just briefly mention I think there was another case, a Banks case, that was cited. And that Banks case, unfortunately, doesn't stand for the proposition that counsel said it stands for. That case was about whether you can have an attempt to initiate a methamphetamine manufacture process. And that's what that case was about. It wasn't about whether initiation of methamphetamine manufacture process is the same as attempt under Tennessee law. So I just wanted to clarify that for the Court. Judge White, did I fully answer your question about the cases? Because you look like you might still be concerned. Well, I'm just still trying to find out what you need to do to begin. What constitutes beginning the active modification? I mean, I would think that you would need to do more than cut open a bag, but apparently not under Tennessee law. Well, I don't have in front of me the specific cases that have interpreted the phrase beginning active modification. Certainly happy to provide the Court with supplemental briefing if it would like. I would note that the Tennessee Supreme Court has not actually construed the statute yet. But the way that this statute has been applied, it has been applied to people who essentially are working on creating meth labs. And that is, if you look at the Tennessee cases that are out there, I'm not aware of a single case where they have applied this to a person who was not knowingly trying to create meth. And it may have been applied to some people who didn't fully know how to actually create meth, and so were not being effective in their methamphetamine creation. But people who really were trying to create meth. That's how this statute has been applied. And the conduct covered by the statute is no different than conduct that other courts have said qualifies as a serious drug offense. I mean, I would note that other circuits have said, look, you can have a conspiracy where you don't even have to engage in any overt act in furtherance of the conspiracy. And that still qualifies as a serious drug offense. You can have an offer to sell where you don't actually have the drugs and have no intention of getting drugs. And that still counts as a controlled substance offense, excuse me, a serious drug offense under the Armed Career Criminal Act. I cite this court to the first circuit's case in Wendleton, Eighth Circuit's case in Binyam, and the Fifth Circuit's case in Vickers. All involve offer to sell situations that have arguably far less serious conduct than what's involved in Tennessee's statute. And those offenses have been found to qualify as serious drug offenses under the Armed Career Criminal Act. Tennessee's offense is an offense that by its terms involves the manufacture of methamphetamine. And for that reason, we ask this court to find that it is a serious drug offense under the Armed Career Criminal Act.  Thank you, Your Honors. Rebuttal. I'd like to begin where the government left off in the discussion of Wendleton and Vickers line of cases. Those carried the, those are at the extreme end of what's considered to be involving the sale of drugs. So in Wendleton and the line of cases that go along with it, you've got the intent to sell drugs, but you don't have the ability. You don't actually sell drugs. You just represent I am going to sell you meth, but you don't have the meth and you're not going to get it. Wendleton says that's enough. Vickers is the furthest extension of that. That's interpreting a Texas statute where you have someone making an intentional offer to sell drugs. You don't have the drugs. You never intend to get them. Vickers says that's enough. This statute is distinguishable for two reasons. First, because of what Justice White already noted. The statute does not require that you ever actually create meth. That's a problem in Wendleton and the other cases that are aligned with it because they say there is a limit to how far this should reach. They use what's called the Brooklyn Bridge example. If you offer to sell drugs and you're sitting in your basement and you have no money and no way of ever getting those drugs that you say you're going to sell. For example, hypothetically saying you're going to sell the Brooklyn Bridge, that should not count as a serious drug felony. That is going one step too far. The only reason Vickers pushed it even further was because of their concern that the Armed Career Criminal Act should encompass and penalize people who intentionally insert themselves into the dangerous world of drug distribution. Again, this statute does not run afoul of that. You can have someone in their home who is sitting there opening a cold compression pack, pouring some Coleman fuel on top of it, never telling anyone what they're planning to do, never telling anyone that they're going to sell methamphetamine, never actually producing methamphetamine, and they can still be guilty of this crime. So it's running afoul of what Wendleton cautions against, i.e., this is too far afield. There's no practical – this is a practical impossibility for this person ever to possess drugs. That shouldn't qualify as a serious drug felony. And secondly, it doesn't meet the Vickers concern, which is do we have a situation where someone is putting themselves out there into this dangerous drug trafficking world? No, the statute doesn't require that. So if you cut open a cold pack or you have pressed pseudoephedrine without actually starting any chemical process, without ever actually creating meth, you are running too far afield of what the statute should encompass. And that's the reason why we think that it should not qualify as a serious drug felony or as an attempt under federal law. And in my last 15 seconds, I'd just like to focus on the fact that there is a federal statute that defines what is a controlled substance offense. That's 21 U.S.C. 802. There are precursors and there are listed chemicals. You can violate this Tennessee statute without having a precursor and without having a listed chemical, and that's an additional reason why we don't think this should qualify as a controlled substance offense. Thank you. Any further questions? All right. Thank you, counsel. Case will be submitted. You may call the next case.